American Forcite Powder Mfg. Co., Appellant, *v.* R. J. Malone & Co. and Locust Mountain Coal & Iron Co., Garnishees.

*Building contract—Retained percentages—Attachment execution.*

Where a building contract provides that the retained percentages shall not be paid until the contract shall have been completed according to the specifications, and it appears that, before the contract was completed, the contractors abandoned the work, and the owners paid all the subsequent wages and supply-bills for the completion of the work, under the supervision of one of the contractors, an attachment execution will not lie on the part of a judgment creditor of the contractors to recover from the owners the retained percentages.

Argued Jan. 22, 1895. Appeal, No. 128, July T., 1894, by plaintiff, from order of C. P. No. 2, Philadelphia County, Sept. T., 1890, No. 16, entering compulsory nonsuit. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed.

Attachment execution.

At the trial it appeared that R. J. Malone & Co., on March 22, 1889, entered into a contract with the Locust Mountain Coal & Iron Company and Lewis A. Riley et al., trading as Lewis A. Riley & Co., to construct a drainage tunnel designated as " The Centralia Drainage Tunnel," " in a faithful, skillful, and workmanlike manner, and wholly at their own cost and expense." The contract contained the following provision:

" On or about the first day of each month during the continuance of this contract the said engineer and the said superintendent shall make an estimate of the quantity and value of the work satisfactorily executed during the preceding month, and upon their certificate of the same the amount which appears due the party of the first part on said estimate, less ten per cent, shall be paid them by the parties of the second part between the tenth and twentieth of each month; and when all the work embraced in this contract shall have been completed agreeably to the specifications and in accordance with the direction and to the satisfaction and acceptance of the said superintendent

and of the said engineer, there shall be a final estimate made of the quantity, character and value of the said work agreeably to the terms of this agreement, when the balance appearing due to the said party of the first part shall be paid to them, upon their giving a release under seal to the said parties of the second part from all claims and demands whatsoever growing in any manner out of this agreement."

The engineer and superintendent referred to were those of the garnishees.

Before the work was completed, defendants notified the garnishees of their inability to continue the work, and of their intention to abandon it. It was thereupon agreed that the garnishees should pay all of the wages and supply-bills for the completion of the work, and that A. C. Douglass, one of the defendants, should superintend the work. This arrangement was carried out. Defendants did not ask for a final estimate, and none was ever given.

I. W. Morris, president of the Locust Mountain Co., testified:

" Q. Did you or did you not, at that time, or at an interview very shortly after that with Mr. Douglass, agree that if he would stay there to superintend that work, that the Locust Mountain Co. and Lewis A. Riley & Co. would pay all wages and supply-bills that were incurred in the completion of the work, and that that arrangement was to be in lieu of the arrangement provided for by the contract? A. We agreed in that way with Mr. Douglass to pay the wages necessary to complete the work—wages and supplies necessary to complete the work—out of the fund which we had on hand. Q. And those wages were paid by you? A. They were. Q. And Lewis A. Riley & Co. jointly? A. Lewis A. Riley & Co. jointly. Q. Directly to the workmen? A. Directly to the workmen; and took their receipts."

A. C. Douglass testified: By Mr. Gowen: " Q. You were present at the interview at Mr. Morris's office, at about the time the attachment in this suit was served, at which an arrangement was made for the completion of the work at the tunnel, were you not? A. Yes, sir. Q. Did you not then and there, and had you not previously stated to both Riley & Co. and the Locust Mountain Co. that your firm were unable to complete their contract on account of your financial difficul-

ties? A. Yes, sir. Q. And that unless some arrangement was made by which the work could be carried on you would have to abandon it? A. Yes, sir. Q. Was not the arrangement then made that the Locust Mountain Co. and Lewis A. Riley & Co. would undertake to complete the work by paying all wages and all supply-bills that should afterwards be incurred in the progress of that work, and that you agreed to go back there and remain till that work was completed and superintend it? A. Mr. Riley stated that was all the relief he could give us. Q. And did you not agree to that? A. Yes, sir; I went back and finished it in that way. Q. All wages and supply bills that afterwards matured were paid by Lewis A. Riley & Co. and the Locust Mountain Co., were they not? A. The money was paid to me; and their bookkeeper, together with me, paid the help. Q. Didn't you give them a list of the workmen, with the amounts due? A. Yes, sir. Q. And did they not pay those workmen, either directly through Mr. Cresse, or give you the money to pay those workmen? A. Their bookkeeper was always present when the money was paid over."

The court entered a compulsory nonsuit and subsequently refused to take it off.

*Error assigned* was refusal to take off nonsuit.

*Thomas Diehl,* for appellant, cited: Excelsior Co. v. Haines, 45 Leg. Int. 256; Hazelton Co. v. Improvement Co., 143 Pa. 572; Kelly v. Snyder, 5 W. N. 39.

*Francis I. Gowen,* for appellees, cited: Hazelton Co. v. Improvement Co., 143 Pa. 573.

PER CURIAM, Feb. 4, 1895:

As we understand the contract between R. J. Malone & Co., and the garnishees, the retained percentages therein provided for were payable only upon complete performance of the contract by the former at their own cost and expense. The testimony that was submitted is not only insufficient to show such performance by the contractors, R. J. Malone & Co., but we think it tends to prove the contrary. As the contract was carried out by the parties thereto there was nothing due the con-

tractors and therefore nothing to attach in the hands of the garnishees. It follows that there was no error in refusing to take off the judgment of nonsuit.

Judgment affirmed.